Good morning, Your Honors. May it please the Court, I'm Jen Doherty for Plaintiff Appellant Michael Segal. I'd just like to reserve a few minutes for rebuttal. The reason we're here today is because on May 2, 2007, the Illinois Department of Insurance conducted a hearing on the revocation of Michael Segal's Illinois insurance producer's license. They did so in his absence, and that day he was defaulted for failing to appear at the hearing. His license was revoked, and he was fined $1.5 million. That fine was later reduced on administrative review. This matter is not about Segal seeking to reinstate his license. He's made it clear that he voluntarily surrendered that through non-renewal. The reason we're here today is because Segal's due process rights were violated. It's undisputed that procedural due process, under all circumstances, consists of notice and an opportunity to be heard. Segal submits that his due process rights were violated when he did not receive notice of the May 2, 2007 hearing before it was conducted, that he didn't have notice of his attorney's withdrawal before the hearing was conducted, and that he didn't have an opportunity to appear through substitute counsel at that hearing. His position is that he was improperly defaulted when these due process rights were not given to him, and that had he not been, he would have appeared through substitute counsel and contested the evidence that was presented by the department at the hearing. Excuse me. Is notice to the attorney notice to the client? Your Honor, we don't dispute that it is. I know that the department has cited several cases saying that notice is imputed. A lot of cases. Many, many cases. They say that, you know, anything that the attorney knows is imputed to his client. Right. We don't disagree with that. However, we think that in these circumstances it's important to look at the facts of this case. We referenced the Milankovitch case, which this Court decided a few years ago, where an incarcerated person had no actual notice of a hearing, even though he was represented by counsel, and he had no means of attending the hearing, just like Siegel here. And in that case, it was deemed that the party didn't have, his due process rights weren't satisfied, even though his attorney had notice. So you want us to carve out an exception to the rule that notice to an attorney, and we're not disputing that notice to the attorney was made here. You want us to carve out an exception that says if the person is incarcerated, notice to the attorney is not good notice to the person? No, I'm not saying that. I'm just saying that we need to look at the circumstances of this case. Here we have someone where he was represented through counsel through the entire proceeding, from June 2004 when this began through just until three weeks before the hearing was actually conducted, almost three years later. I guess up through that point, as he's represented by counsel, the case was continually entered, I guess it was entered and continued, while there was a case pending against him in the United States District Court. They conducted discovery in this case. And then his attorney withdraws, and then three weeks later, the hearing officer goes ahead and conducts a hearing in Siegel's absence. While the department knows that he's in prison, he knows that he's unable to leave prison to attend any hearings. And he, as the record reflects, But what are we supposed to do with that, counsel? I mean, we have this, I think we all agree that notice to the attorney is notice to the party. And we all agree that in this case, there's no question that the attorney was aware of the hearing date and that it was going forward. All of this other stuff that you're saying, what are we supposed to do with that? Well, there's two components of due process, the one being the notice and one being the opportunity to be heard. I think the record's clear that even if Siegel's attorney had notice, there's nothing to show that Siegel actually had actual notice himself of the hearing. Is that what the law requires? No. The law does say that notice to an attorney is imputed to its client. But we also have to remember the second component of what due process requires, which is the opportunity to be heard. And even if this court were to find that that notice was imputed to Siegel, even though he wasn't without counsel, we have to remember that he didn't have counsel to go ahead and appear for him at the hearing. Can I ask a question? So he had a lawyer for a long time, and then he didn't have a lawyer. And the hearing went forward. And I know we have lots of issues about whether he actually noticed himself personally. But one of the arguments to me is soon after the hearing, you and your firm filed an appearance, right? Correct. Did you ever ask to participate in the hearing to present evidence, to reopen the evidence that had been heard during the hearing? Yes. Here's what happened. So the hearing was conducted on May 2nd. Our client called us shortly thereafter, about early June, when he had learned that his attorney's withdrawal was granted, that the hearing went forward. I called personally, the hearing officer, explained the circumstances, and I said, we'd like to reopen the hearing. We've been retained as substitute counsel, and we've got evidence we'd like to present. We want to, you know, contest whatever evidence was presented. At that time, we didn't know what had happened. The hearing officer represented to me that he could not, he said he was in the process of making his findings of fact, conclusions of law, which he was going to give to the director. And the director would then enter his final order. And at that point, we could move to remove, or move to reopen the hearing and to see whether it could be reopened so we could present our own evidence. First of all, can I ask you this? In the record book, we read these briefs, and we read them aloud. Your argument is this one. I could carry that around and read that. This is, this appendix makes life really difficult to learn. But, at A, whatever it is, 99, is the letter, I believe, that you wrote to document the conversation you had, which I think you described. In other words, I'm asking you, is there anything in the records here, beyond this document, that tells us, did you ever petition in any formal way to reopen? Nothing in this letter that is in our record indicates that you asked and that you were told you could not present additional evidence. Well, this is the letter that I did write to confirm the telephone conversation. However, I guess the only bit of evidence that would show what you're looking for is my affidavit that was attached to the motion to reopen the hearing, which, based on this conversation that I had in June, I had waited to file until the final order on remand was, I'm sorry, the final order was entered. So you filed a motion to reopen. Yes. I'm not sure what that is. And then there's some order we'll find in here denying that motion? Yes, there is. You moved to vacate the hearing officer's findings sometime in September, and then later in November, the 28th of November, that motion was denied, right? Right. Okay. And then you filed a complaint for administrative review in the circuit court? Yes. In December of that year. And then that was affirmed, and you ended up here. Right. This is my real question. Your argument here is about due process. Yes. You're not making an argument that you should have been able to do some kind of error in denying your request to reopen the case to present evidence. You're not making that argument. Is that right? No, we're not making that argument because we thought that the appropriate avenue to pursue after that was going to the circuit court for administrative review. On the due process idea? Yes. You say this, but you don't really argue this. Here's March 2nd, May 2nd. You sent this letter June 12th. The decision of the case wasn't until September. Right. And you kind of suggest, you know, here we were, and they went ahead and we could have participated, but we didn't. But you're not saying there was any kind of abusive discretion in denying your opportunity to be heard during that period after you filed for your notice of appearance. Well, we definitely submit that had the hearing officer continued the matter so Segal could retain counsel, they wouldn't have been prejudiced, but that we were prejudiced, but that Segal was prejudiced by not being able to be represented at the hearing through counsel, and that all this time had lapsed when it doesn't make sense. So you are making an abusive discretion argument, although you haven't quite characterized it that way, right? Yeah, we did in the circuit court. We did not in this brief. And, Your Honor, A182 to 183 is my affidavit that I was talking about that explained the conversation I had. You stated, I show my notes and I may be in error. After the hearing, before the hearing officer, he issues his finding of fact and conclusions of law in September of 2007. The director adopts those shortly thereafter. In October of 2007, you file your motion to reconsider with an affidavit. Am I correct? I've got it in my notes. Motion to reconsider with the affidavit from new attorney, that would be yourself. Not from, these are just my notes, not from Siegel. There was never any indication from your client or an affidavit from your client as to when exactly he received notice, other than a statement, I think, somewhere that he received notice sometime after May 2nd. That's correct. However, I know that's something that the department has raised on this appeal, but that's an issue that was never raised before. I mean, I filed my affidavit explaining, which is where that information came from, that he didn't receive it until after the hearing was conducted. And throughout the entire process below with the circuit court, that issue was never raised. It was raised for the first time now that my affidavit didn't comply with Rule 191 and that Siegel never presented his own affidavit to the court to explain that. So I think it's a little unfair at this juncture to make that argument, but it is what it is. Siegel did not file an affidavit himself that specifically states, I received the notice after the hearing date. So I think the important thing here to look at is not only the notice, but the opportunity to be heard, because the Administrative Review Act provides that a party has the right to be represented by a counsel. And when Peterson's motion, which is Siegel's previous attorney, when his motion of withdrawal was granted, Siegel didn't have substitute counsel that day to represent him. He wasn't able to leave prison to attend the hearing, to even know whether the motion was going to be granted or not. And he wasn't able to leave at any other time, including for the May 2nd hearing. Let me ask you, was there any lack of diligence on Siegel's part? I mean, there is evidence that he knew that there was something pending before the department because he, in fact, requested a hearing. Right. So he knew, and when he got a letter from his lawyer saying, I'm withdrawing, well, the lawyer didn't mention anything about the hearing. But was there an obligation on the part of Siegel to say, hey, what about that hearing that we requested? I mean, does he have any obligation to be diligent in his own behalf in finding out some of this? I'd say he does. And I'd say that given his circumstances, which I asked this court to consider with his limited means of resources and access to communication, that he did act diligently in trying to retain substitute counsel. I mean, he's only allowed to make so many phone calls for so many minutes per month. He has to work with family members and friends to try to find someone out here in Chicago. I mean, he's up in Wisconsin to try to find someone who can represent him in a matter here as substitute counsel. And, you know, as soon as we got the call and Ed Joyce from my firm decided that we would take the case, I immediately called to see how we could go about becoming substitute counsel. I do think that he acted diligently in doing so. Well, that is the point. Maybe I'm not getting the facts straight, but it seems that he did acknowledge getting his lawyer's letter at some point, but it wasn't until after he got the letter from the hearing officer basically saying, you know, it was sometime after that, in June, that he actually contacted your firm and you came in. So, you know, there was no question that he did receive, I think his affidavit suggested that he received his lawyer's letter. So my question goes to that first letter from his lawyer. Did he put in motion at that time any inquiry to his lawyer, like what's going on with the hearing or anything of that nature? There's nothing to suggest that he did in that affidavit that I saw. No. And to be honest with you, I don't know. The record doesn't reveal that. And I don't know from Mr. Siegel. I know that he is represented to me, and I portrayed to this court and the circuit court in the department, that he did not receive the notice until after the hearing was conducted. I don't know what point, and I don't know if he knows, because the notice, the letter that the hearing officer sent to him, although it's dated April 12th, there's no certification of it being mailed that day. Presumably it could have been. It wasn't mailed by registered or certified mail, so there's no way of tracking when it actually went into the prison and then went through all the processes there to get to Siegel. And, you know, also I have no idea between when he actually learned of it and when he contacted my firm. I don't know if he actually contacted anyone else before he contacted us to see if we would represent him in this matter. I just know that when he did contact us, we moved as quickly as we could. Let me rephrase the question. Maybe this has been cleared up. I have in my notes that you filed your appearance in this case on June 12th of 2007. Yes. When, what was the, if there was any time span between the time you were first contacted by Mr. Siegel and the time that you filed this appearance? I believe it was two days. I'm sorry, two days? Two days. The day that we, the day that Ed Joyce told me we were taking this case, I immediately called to see what I could do. And then I believe it was two days later I filed the appearance when I figured out where I had to send it, how to do it, and the... And when you spoke with him at that time, he did or did not say when he received notice? He said he learned that a hearing had been conducted already and that his attorney's withdrawal had been granted. So I think the most important points here are that we don't think that Siegel was properly defaulted at that hearing because he wasn't afforded his due process rights of notice and especially an opportunity to be heard. Siegel has made clear, and we've really pushed hard since this time, that had we been able to go in as a substitute counsel, we would have presented our own evidence. Siegel has, he had presented evidence to the department throughout the proceedings before the case actually went to the hearing that we would have used and raised to rebut what the department put on. The only reason that the judgment was entered against him was that he didn't show up. I mean, the fine... It all happened. But the fine that was initially assessed against him was $1.4 million in excess of what the department could even charge him anyway, had they found that the default was proper. And I guess that just leads me to my last point, is that had he been able to appear through substitute counsel, we would have contested the evidence that was presented and shown that it didn't comply with the evidence under the Illinois Rules of Evidence. The violations that are alleged in the order of revocation are based on a series of audits and work papers, stuff like that, to which the authors are not identified. They weren't called at the hearing. They merely had a man from the department come and testify as to what the order of revocation said, and the hearing officer said, well, okay, you've read that in. 1,094 violations must have occurred, and, you know, judgment for the department. Is that what happens in just about every default proceeding of this kind? Sure, but those circumstances could be different where, you know, someone may have deliberately not shown up or tried to avoid this. Here, Siegel was represented by counsel the entire period of time, except for the three weeks before the hearing was conducted, and immediately after it was conducted, we had Edward T. Joyce file the substitution. And finally, the only other point I'd like to make is that, you know, during this time when this proceeding was going on, there was also the proceeding in the Northern District, which kind of had similar related issues to this case, and we just ask that this court, and we ask the circuit court as well, to take judicial notice of those findings because the findings that were reached there don't support the findings that could have been reached in this order of revocation, even if accepted as true. And those include that there was no economic loss to Siegel's clients, that there was no fraudulent intent, that Siegel had no victims, and that every client received their insurance and every insurer received their payment on time for four years. We just ask that this court take that into consideration. And other than that, unless this court has other questions, I'll just reserve the rest of my argument for rebuttal. Thank you very much. Thank you. Good morning, Your Honors. Assistant Attorney General Evan Siegel for the Division of Insurance and its Director, Michael McGrath. As was noted a moment ago, there's no dispute about the black letter law in this case that notice to an attorney is imputed to a client. That's the critical legal foundation of where we are. And the critical fact is that the Department gave sufficient notice to Mr. Siegel through his attorney, Mr. Peterson, on February 26, 2007, of this May 2, 2007, hearing about eight weeks out. The fact that Mr. Peterson subsequently withdrew is of no constitutional significance. It doesn't change a thing because notice to the attorney is notice to the client, as this court has held in cases such as Williams and Kellett and Smith. And the case that counsel cites, which I believe is called Milankovic, is a 30-year-old case that doesn't stand the test of time because it, I believe, has been overruled, although not officially, by the U.S. Supreme Court's decision in Doosanbury, which involves an imprisoned inmate who did or didn't receive sufficient notice from the FBI about forfeiture proceedings. And there is no carve-out, to your question, Justice Cunningham, about particular facts or circumstances. That would be an exception, of course, that swallows the rule. Notice to an attorney is notice to the client. I want to dispel a theme that runs through counsel's brief and a bit of the argument you heard here this morning, and that is this idea that the opportunity to be heard, the second prong of due process notice and opportunity to be heard, that opportunity means actually being heard. It doesn't. They would like to read out of opportunity to be heard the concept opportunity and just require actually showing up with lawyer or pro se and being heard. If that were the case, no case could ever be decided on default. And as Your Honor pointed out, there are consequences to default. And if you read out opportunity from opportunity to be heard, it would mean as well, of course, that actual receipt of notice is required for due process to be satisfied. That is not the case either. All that the agency needs to do is take reasonable steps under the circumstances to apprise the affected party of the pending hearing. It's the touchstone is notice. It's notice that facilitates the opportunity to be heard. Whether you avail yourself of that opportunity, that's an entirely different question. Let me ask you this. This case began in June of 2004, right? Yes. And it was continued many, many times for lots of different reasons, right? Yes. And there was a hearing held on May 2nd. Correct. And the hearing was basically affidavits in one witness, correct? Yes. And some time later, my math is not so great, but June 24th or whatever it is, there was a notice given on June 12th, from May 2nd to June 12th, that in fact a lawyer had agreed to represent Mr. Siegel, right? Right. And at least at some point after the May 2nd hearing, the issue was taken under advisement. And a decision was not issued until September. Right. And then there was a motion that was filed to reopen and setting down a series of arguments, including one, a lengthy one, about what evidence Mr. Siegel would have presented. Right. Then in November, that motion to reopen the hearing was denied. Correct. Why not reopen the case and let some evidence be? I mean, why not? The case has been going on for years and years and years. You know, so the guy is in custody. At one point his lawyer doesn't show up. The case is under advisement. You know, it takes a while to write all this stuff up. We understand that. Why not give him a chance to be heard? Why not? Well, the best answer and the most accurate one is due process didn't require it. The case is framed as due process. Yes. Why not? We do this all the time. We see this happening all the time. Just picture how many cases there are around the daily center where somebody comes in and says, you know, this is not required. The judge. I missed the last deadline by just a couple of weeks. This is my life. Please. And I would think most times the judge says, you know, no harm, no foul. The decision to reopen was at the discretion of Director McRae. It was an abuse of discretion. Well, the abuse of discretion standard, which we don't think applies here, because they haven't articulated the issue as challenging the director's decision not to reopen. I looked again last night at the complaint for administrative review. And the particular decision not to reopen is, I believe, not identified. As you heard a moment ago, they have not raised that issue on appeal. It's therefore abandoned. But the decision is Director McRae's. And on the abuse of discretion review standard, abuse of discretion standard, the Court is exceptionally deferential to the decision of the director. And the director's decision not to reopen in November, and I'll talk in a moment about the letter that you asked about earlier, the director's decision says that there was, and this is found, if you'd like a reference. A135. Okay. We don't find that there was any problem with notification. He was represented by counsel. Counsel, we know all of that. Presumably the director knew all of that. And by the time Ms. Daugherty contacted the director, she presumably told him, my client claims he didn't get this until after the hearing. So I think Justice Tice's question goes to what harm would have, this goes back to the abuse of discretion question that Justice Tice asked earlier. Why isn't it abuse of discretion to reopen this? Nothing had occurred. In this case, in terms of the findings of fact and conclusions of law not having been completed at the time that the director was contacted by Ms. Daugherty, what would have been the prejudice to the department to allow the matter to be reopened, considering how long this case had been pending? Well, there could have been several levels of prejudice. Why not delay it six more months instead of coming in on the 42nd day and filing and writing a letter and filing an affidavit from counsel? My question is very specific and very narrow. She explained to the director that her firm had been just retained. I think she said she either contacted them the same day or within two days. And her client had also informed her that he had just received the notice that this had occurred. So under those facts, you know, saying, well, why not six months or eight months, that's changing the factual scenario than the one I gave you. What would have been the harm for the director allowing the hearing to be reopened at that point? The conclusions of the law, the findings of fact had not yet been prepared by the director. So what would have been the harm? It would have added to the administrative burden of the agency. If everybody could come in and delay every hearing, oh, I didn't get notice, oh, I decided to change lawyers in the middle of the battle. These hearings and the evidence that underlies it. So isn't that what discretion is about in terms of weighing the administrative burden versus someone's right to be heard and, you know, which one, how do you balance that? And that's what I'm asking. And there's a case that talks about the balance of speed of justice and having to come down to the side of justice. Justice was served here because there are consequences from default. There are cases that we've cited in our brief. What happens all the time, Your Honor, as well in circuit court is- They don't think justice was served. Well, default is- You're worried about the department. And it's going to be really a burden on them if they open up the case and let them call these. It's going to have all these affidavits. This is the burden that we're concerned about, right? That's what you told us, right? So the hearing was May 2nd, and when was the decision made? The decision was entered in September because there was- In the interim, there was a report of recommendation. Right, right. So it took the board four months to write this opinion, right? How hard would it have been to give him a day to present his evidence? Well, he wasn't entitled to the day because he defaulted. There are consequences from default. Default is tantamount to an admission of liability. And once there is such an admission of liability, as you pointed out, Justice Cunningham, then the penalty provision comes into play. And I just want to back up and correct something that we've been discussing. The conversation that counsel had, or the correspondence, was not with the director. It was with the hearing officer. And the hearing officer's responsibility is to make a recommendation within a time certain to the director who has the final authority to issue the administrative decision. There's no provision under the administrative proceedings that allows a party to press the pause button and put on hold what the charge is to the hearing officer. The proper procedural remedy, which they follow, was to wait until a final decision was entered. At that point, ask for a rehearing. And I'm sure there are cases that we could find where hearings have been reopened because they were deemed to be meritorious, and the hearing takes place. The director, in his discretion, in November, denied that request because they hadn't made a sufficient showing that there was a problem with service. And that is the essence of this case. They listed in their motion all of the witnesses they recall. They would have presented witnesses or affidavits of witnesses to testify to certain things. For example, see copies of affidavits of Brett Gerger, Don Hough, Roger Johnson, Zach Stanton, Laurie Riley, for example. Each of these individuals would have discussed this or that. Segal would have presented evidence at the hearing. Other evidence he would have cross-examined about certain things. Absolutely. Your Honor, I am sure that every party who defaults in an administrative hearing or in the circuit court can, after the fact, tell the court, the Court of Appeals, what a wonderful, convincing, persuasive, thorough, evidentiary case that they're going to put on. That's not the standard. What's going to happen afterwards, post hoc, what could have happened, we're not here, and counsel has stated in her briefs, she's not here to argue about the merits of the case. The case is about notice, which was sufficient. And it satisfied due process. Can you give us any ideas about someone who is locked up and unable to represent themselves, per se, and appear? Yes, Duesenberry v. United States. United States Supreme Court, 2002. Forfeiture proceeding related to the criminal conviction. Several thousand dollars at stake, I believe. Monetary forfeiture. And the Federal Bureau of Investigation sent, in conformity with the statutory requirements, three separate notifications to the prisoner at his former address, at his mother's address, and at the prison where he was housed. They sent it by certified mail. And the prisoner claimed that he didn't have sufficient notice of the forfeiture proceeding. It went up through the Sixth Circuit to the United States Supreme Court, which held that all that's required under due process is reasonable notification under the circumstances. And using the United States Postal Office to a known prison address is sufficient. And that's what we have here. Sufficient for due process. Yes. In the calculation of abuse of discretion, you weren't here, there are consequences. I wasn't there, I couldn't be there. Right? Isn't that a factor that these folks should have taken into consideration when they're balancing the decision about whether or not to grant the motion to reopen? It might have been. But, again, this was up to the director's discretion. And what's notable, you touched upon this a moment ago, the affidavit, here's Director McRae from September or October hearing this motion for rehearing. The affidavit that was insufficient notice doesn't come from Siegel, who has personal knowledge of what happened. It comes from his attorney. And Siegel, Your Honors, never says in his affidavit, I refer you to his affidavit, which is at 8-221-222. There's no particular facts in there about what happened. There is vague obscurity. Sometimes my mail doesn't get to me for two weeks. I'm told that other mail never gets to me. Well, did you or didn't you get? Well, are you saying that if he had specifically said, I did not get notice of this particular hearing, and it took place without me ever having had a chance to provide substitute counsel, is that your argument, that had he been that precise, the outcome may have been different? Well, there was no precision at all. He just talks about mail doesn't get to me. I'm trying to figure out what your point is. Because this all has, with an abuse of discretion issue, it's very rare that there will be a black and white line. I mean, it's all a matter of the totality of circumstances and weighing what's fair. Yes. My point is that Mr. Siegel didn't overcome his burden to show a reason to reopen this hearing. He didn't demonstrate any problem with notification. He never said anything in his affidavit about receiving anything. Did he or didn't he receive Peterson's withdrawal notice? Did he or did he not know about that the hearing was scheduled? Did he or didn't he get the notification sent on April 12th to him that Peterson had withdrawn? Did his lawyer, who had his own obligation to tell him that the withdrawal order? Counsel, he didn't deny receiving notification from his lawyer. What he denied receiving notification of was through his affidavit of his current lawyer. No, I disagree. The actual hearing date. No, I disagree. Throughout his brief, there's an injection of ambiguity into this, if Siegel received notice that his attorney would cease. He says the content of Peterson's letter is unknown, the content of the March 6th withdrawal. The content of the letter from your lawyer to you, the client, is unknown. It doesn't stand to reason. The point is, on your abuse of discretion question, that Mr. Siegel didn't show that there was a basis to reopen this hearing. And how do we know that? Because the hearing officer is the fact that the director ruled against him, dispositive of the fact that he didn't meet his burden? I mean, if they ruled against him, that's why they appealed. But the fact that you seem to say, well, the hearing officer or the director ruled against him so he didn't meet his burden, but is that the criteria that we look at? Well, you defer to, highly defer to, on an abuse of discretion standard to the director's decision. The director says, I think I'm paraphrasing, there was no problem with notification. And I think we can infer from that that the affidavit that was submitted, which was secondhand information, didn't show that there was any problem with notification. But let's put inside the fact that this argument has been abandoned. It doesn't matter whether Mr. Siegel received notice. That is irrelevant. It doesn't matter, and counsel concedes in her brief, whether Mr. Siegel actually, whether the affidavits are good or not good or of evidentiary wit is irrelevant. For due process purposes, all that matters is what the sender did. Under Dusenberry, Jones v. Flowers, this Court's decision, and Wang, the Illinois Supreme Court's decision, and People, Expel, Divine, what matters is whether notification was reasonably calculated to reprise the recipient of the hearing. All that aside, and it doesn't matter, again, whether Mr. Siegel received, whether Mr. Siegel provided an affidavit that clears things up for the Court, there's a concession, I believe, in the reply brief that's somewhat remarkable, given all this and this discussion. On page 11 of the first sentence, here Siegel, who was unable to appear for the presentation of Peterson's motion to withdraw, and thus was not informed of the outcome of such motion until he received such notification by mail, had less than three weeks to secure new counsel before the hearing was conducted. He had less than three weeks. That suggests that Mr. Siegel had knowledge close to the time of the letter sent on April 12th that his lawyer had withdrawn. And he had the opportunity to be heard. He had the opportunity to take other steps to retain counsel. And he didn't do that. It's kind of hard. You know, you're sitting in an office. You've got to start getting on your Rolodex and calling the lawyer. You're asking a lot. You're asking a lot. I mean, here's somebody who's locked up. Let's say a guy. We agree. Notice this. Okay. Oh, my God. Hearing's in three weeks. What am I going to do? Start calling people. No. I have a big problem with the record. And I have a big problem with how these issues that were raised have not been raised. But, you know, how many phone calls a day do you think he gets to be able to contact a lawyer in the city of Chicago and rush down and make this appearance? Finally, he gets a lawyer, and they say, we're here. Oh, no, no, no. I'm sorry. You can't do that. In June, 41 days later. Yeah. That's as soon as he found out. Yeah. He's sitting in Oxford. Well, I don't. He's not walking up and down LaSalle Street knocking on doors. He certainly could have. I don't know how many phone calls he gets a day, but he could have made one to the division and said, I just got this. Can you hold the hearing? He could have filed a substitute appearance saying, I'm pro se. I'd like to move the Bureau of Prisons to allow me to come out and represent myself. He didn't do any of these things. And he's sitting in prison, Your Honor, just like the party in the Duesenberry case. And the United States Supreme Court held in that case that there is no different treatment for prisoners. Due process doesn't require it. So we would ask that you affirm the division and the department. Thank you. Counsel, please sit down. Thank you. I just want to make a couple of quick points. The first being that talking about the prejudice here between the department and Mike Siegel. This hearing was conducted even though Mike Siegel's insurance license had lapsed. This was a revocation hearing about a license that he had voluntarily surrendered through non-renewal. So the fact that they had to push through without continuing the hearing I think was a great prejudice to Siegel. And I cited a few cases in my briefs that explained that although an administrative body might have goals of achieving a prompt and economical determination on the merits, when the facts justify, just like they did in this case, a hearing should be continued. And I cited Six Brothers, Kings Drive Supermarket, Inc. v. Department of Revenue, where the court held that where an administrative body must choose between justice and speed, it must pick the side of justice. And I think the side of justice here really shows that the department should have continued this hearing. I mean, the hearing officer acknowledged that Siegel was without counsel at the revocation hearing. There was no indication in the record whatsoever that Siegel had notice of his attorney's withdrawal being granted. I know counsel pointed out to my brief at page 11 where it says, Siegel, who was unable to appear for the presentation of Peterson's motion to withdraw, the fact that that sentence made is just a fact that he couldn't be there. Whether he had notice that his attorney intended to withdraw or not, it doesn't matter. He could not be there to learn what happened, and he didn't learn, as we've explained and as the record shows, until after the hearing was conducted. You know, it's proper for an attorney to withdraw whenever they can get leave of court to do so, but the Illinois Supreme Court rules provide that a party should be able to retain substitute counsel. They should get that opportunity. And we're just submitting here that Siegel did not have that opportunity to do so. As I said, we don't dispute that what the law is. It is that when an attorney has notice, it's imputed to their client. We can't dispute that, but I don't think that... So isn't the real issue that you're arguing here is whether the director abuses discretion? That's your real argument, as far as I can tell. You don't list that anywhere in your... I didn't see it. I mean, it's kind of threaded throughout your argument, both in your written material and what you're saying here today, but you have five issues listed here, but not one of them references abuse of discretion. Yeah, it is the essence of our claim, but at the same time... Why didn't you put it in your brief? Because... That's your strongest argument. You spent most of your time here today talking about that, but it's not in your written material. Well, my understanding of the administrative review law is that once that decision is made, you are asking the circuit court or then the appellate court to review only the decision that was reached. So that's why we proceeded... Based on whatever creative arguments lawyers come up with, and lawyers are creative. You come up with lots of arguments. I'm just wondering why that wasn't clearly crystallized in your argument, because that's essentially what you've been arguing throughout this, before this court. Well, I apologize for that, but I think in the end of the day here, you know, Siegel, as any other party, is required... He's supposed to get his due process requirements of notice in a hearing. I don't think that the case that the department relies on this Duesenberry is dispositive or does away with the case that I relied on. I may have pronounced it incorrectly. Milankovic, I think, is what he said. That case is still good law in Illinois, and I think it's very instructive in this case. I mean, in that, Duesenberry is about whether someone, you know, whether... It focuses, like he said, on what the department did. Did they follow what they're supposed to do when they give the notice? And that is what it is. But here in Duesenberry, this, I'm sorry, Milankovic, the party here was represented by a lawyer who had notice of these hearings and didn't do anything. And, you know, his hands were... The party, he's in jail, his hands are tied behind his back, he really can't do anything. So, just... Bring your marker closer. Okay. Unless this court has any other questions. We just ask that Siegel be given an opportunity to present his evidence through substitute counsel.